I'd like to make a motion. I guess I would make that motion to you, Judge Lurie. I would like to entertain the motion. Okay, I'd like to... Seth, would you rise? What I'd like to do is move the admission of Seth Isaac Heller to be a member of our bar. He's a member in standing of the bars of the State of Virginia, the District of Columbia, and also the Court of Federal Claims. He has served me, I think you both know quite well, as a magnificent law clerk here for this last year and goes from here to Israel where he will serve as a clerk to the Chief Justice of Israel, a very prestigious position before he returns to Arnold and Porter. I'm very proud of him and I think the court can be proud of him. I move his admission to the bar. Thank you for that motion. Judge Proust, has the Chief Judge made a persuasive comment? Always. We will grant the motion then. Would you step forward and take the oath? Please raise your right hand, swear or affirm that you report yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. I do. Congratulations and welcome to the bar of the United States Court of Appeals. Our first case this morning is O2 Micro v. Van Loban Sells. Mr. Van Loban Sells. Good morning, Chief Judge Rader and may it please the court. A little over two years ago, in response to a single vorderic question, the trial court summarily and without notice held me in contempt and sentenced me to 48 hours in jail. The court suspended the jail sentence until the end of trial, at which point the court said that it would deem the sentence served.  That is correct. That is correct, Your Honor. Under a controlling Supreme Court and Fifth Circuit law, the only conclusion available is that the trial court's contempt sanction was a criminal penalty. Under the Supreme Court's decision in Gompers and the Fifth Circuit's decision in FDIC v. Legrand, that analysis requires a finding that it was a criminal penalty. Isn't the distinction between criminal and civil penalty, doesn't it, hang on whether it's to compel conduct or to punish past conduct? And isn't it clear here that it was to compel conduct, which in fact ought to prohibit further conduct, and there was no further misconduct, if you will. So why isn't that clearly civil, not criminal? Well, actually, the purpose of the sanction here was to punish past conduct. In fact, it was not to serve as sort of a general. But the prison sentence was conditional, and it never occurred. It was obviously intended to compel proper conduct. Well, only in the sense that every criminal sentence has a deterrent aspect to it. But all the cases, including Gompers and FDIC v. Legrand, look to the nature of the penalty and also the nature of the order at issue. Here, the order at issue was a prohibitory order, not a mandatory order. And the prohibitory order here was a limine order precluding the introduction of evidence concerning taxation, rather than, say, a mandatory order compelling production of tax records or some other act, like complying with all court orders in the future. Then the fact in FDIC v. Legrand, the Fifth Circuit actually addresses the issue about whether it's important that the jail term was actually served or not. And the Fifth Circuit squarely held that that did not matter, that the fact that the jail term was not actually served means only that the sentence was not executed. If we don't agree with you, and if we conclude that it was civil, do you lose the appeal? No, you're wrong. That's just the first step in the analysis. If the decision is that it's a civil contempt versus a criminal contempt, then that only removes the protection of Rule 42 of the Rules of Criminal Procedure, and it changes the burden of proof. But even a civil contempt sanction would require a literal violation of court order, and we don't have that here. The court order in question here is the limine order from the trial court, and the prohibition from the trial court was to prohibit the introduction of evidence on the subject of taxation. My question to the jury veneer was not evidence. It could not be evidence, and it was found by the trial judge that it was not evidence because the trial judge told the panel at the end of jury selection that nothing they had heard during jury selection was evidence. So clearly what happened here was the trial court construed its limine order as precluding all references to the taxation issue, and that is not what the order actually says. The order does not prohibit all references. But we understand pretty well, don't we, what the purpose for this was. It was to shield the jury from improper communications. Those communications took place. Judge Everingham, who is held in high esteem throughout his district and in this court, perceived that as the greatest violation he'd ever seen of his orders. Yes, and I don't doubt that subjectively Judge Everingham knew what he intended by his ruling. But the important point here is as of the time that I asked my question in Vourdier, the judge had not revealed the basis for his decision at all. If you look at in the joint appendix at page 305. I guess the point that I'm trying to make is it's very clear that he did not want to prejudice his jury. And if you interpreted the word evidence to give you an opening, you still were pushing this main point, which was to prejudice the jury in your favor. Well, I agree that after the fact, when he ruled on my objection, and later when he held me in contempt, that he indicated his concern was jury prejudice. But it's not clear when he actually decided. Was there a question about that before? Yes. Why did you bring it up except to cause some impression to be made on the jury about the Cayman Islands? Well, that was not the purpose of the question. The purpose of the question was to discover whether there was any existing bias so that I could make my peremptory challenges, so I could decide which of the panel members. You were going to exclude someone who had a problem with Cayman Islands? It would have been in your favor. Well, it could have been. You're pushing my credibility now. Well, no. It's very clear that your intention was exactly what Judge Everingham perceived it to be. And I'm a little troubled that you would try to defend your conduct on such a shallow legal technicality. Well, I guess I can't say for sure what Judge Everingham believed at the time that he issued his order. He said so. He said he was protecting against jury prejudice. He was very clear that he was making this a conditional ruling to coerce your future conduct. Each of the arguments you're making seemed to have been very clear at the time. Well, you are correct. That's the rationale that he had when he issued the contempt. But my point was when he decided the actual motion, he did not indicate that he was concerned with jury prejudice. And it could just as easily have been that he viewed this as irrelevant evidence, an evidence that he did not wish to waste the jury time by introducing it. And that's why the actual prohibition that he has in his order is different from a motion eliminated that was issued at the same time. I have sat several times. Whenever I've had a foreign party before me and I'm the trial judge, I prohibit any mention of the foreign status because we don't make decisions in our courtrooms based on the character of the parties. We do it on the basis of the law and the facts. I'm having a great deal of trouble understanding your argument that you didn't perceive this. This is automatic in U.S. courts that you don't refer to prejudicial material. And this was so blatantly prejudicial that you're pushing my patience here a bit with your arguments. I apologize for that, Your Honor. I guess I don't have the same view about this fact. And I think that there certainly could be— You don't perceive prejudice in what you did. I do not, Your Honor. I don't believe that— You didn't ask that question to gain some advantage from the jury. The only advantage I sought to gain was to determine which of the panel members might care about that issue. And if they cared about it, why was that of relevance to you? That was of relevance to your opponent, not to you. Right, but it's information that would have been useful to me in exercising my challenges because there could be— You would have challenged someone who was concerned about a Cayman Island corporation? Well, there could—no. They would have been in your benefit. No, the opposite is true, Your Honor. There could have been panel members who had demographic or other information that suggested they should be somebody I would strike. But if I found out this is an issue that they care deeply about, then that could have been something that would have overrode those concerns. Yeah, that's right. You would have tried to keep the jurors because you would think they would be prejudiced for your side. That's not—I don't understand why you think that's a helpful argument. Well, because the purpose of voir dire, from my perspective, from the trial lawyer's perspective, is to pick a panel that I think is going to be receptive to my client's case. It is the job of the judge to try to make sure that the panel is impartial. But one of the things that we do is question them about their demographic background. How long have you been a trial lawyer? Sixteen years, Your Honor. Sixteen years. Yes. Then you undoubtedly know, as every trial judge does, that voir dire is one of the areas where the trial attorneys try best to prejudice the jury in their direction for precisely the reason you say. It's not evidence so they can push things a little bit, and they try to do so. And good trial judges, as Judge Everingham is, don't allow that. I don't disagree with that. That's part of the presentation during voir dire. And yet, in this case, he gave you very clear instructions, what he didn't want happening, and you proceeded in the face of that. Well, and— And to have even tried to defend your conduct is pretty— Well, with respect, Your Honor— Unnerving. Well, with respect, Your Honor, the context of the limine order at issue here. There were three relevant orders, all issued at the same time. One of the orders concerned the judge's relationship with O2 Micro's damages expert. Would you like to save your rebuttal time? Yes, I would, Your Honor. Thank you. Mr. Harkins. Thank you, Your Honor, and may it please the court. There are basically two issues at stake in this appeal. The first issue is whether or not the order was violated, which we've just heard about. And then the other issue is, if it was violated, did the court follow proper procedure? And I think the answer to both of those questions is absolutely yes. The order was clearly violated. This wasn't a close question. Judge Eberingham didn't feel like he had to grapple with this issue about whether his order was violated. He said, I have never had a lawyer violate one of my orders more egregiously than you have. And that's the record at A522. Even Byteck, who you'll hear from later today in the companion appeal of this case, does not challenge. Byteck, who was also sanctioned for the same conduct, does not challenge that the order at issue was indeed violated in this case. Only Mr. Van Loeb himself seems to feel that he found a loophole by which he could violate the spirit of the order, but claimed that it wasn't evidence because it was a bald-faced assertion for which he wasn't allowed to introduce evidence and had no such evidence. But contempt in these proceedings is an important thing for the court to be able to have. It's important for the court to be able to maintain decorum and to have people follow the orders. And in one of the cases we cited, the Ingalls case, they say it's to prevent insults, oppression, and experimentation with disobedience in the law. And that's really what happened here. This was an experimentation with disobedience of the order to see how much this lawyer could get away with and just basically flout the court's order, but then claim to have a technical response that would hopefully avoid punishment. In fact, the lawyer did, at the end of the day, avoid punishment in this case because the way that this order was phrased was clearly a civil order and not a criminal order because it was purely coercive. The idea was to wake the lawyer up and get him to follow the orders for the rest of the trial, at which point Judge Agrahan didn't say it would be served. He said the sentence would be discharged. And I think in the context of this proceeding, discharged is a somewhat ambiguous word, but I think here you would consider it basically extinguished. You're going to go to jail unless you follow my orders. And there was a reason for this, which was a couple of things happened in this case. Prior to this violation of the order, there had been a motion for sanctions for other conduct by Mr. Van Lobenzeld that occurred during deposition, where he was sarcastic and insulting to the plaintiff's expert witness in the case. That came up as a motion during the exact same hearing this Cayman Islands motion came up, and the court granted the motion for sanctions saying that as a result of that unprofessional conduct that Mr. Van Lobenzeld and no Vitek lawyer would be able to ask the lawyer about his rates. And during that exchange, the court made clear that he would not occasion other unprofessional conduct in the case. So then that happened on the 2nd of July. Then four days later, there's what he considers the most egregious violation of his order he's ever seen from the exact same lawyer again. He feels like this pattern of conduct has to stop now. I have to take action, and I have to serve to do something that's a wake-up call. If you look at the transcript, you'll see that in the context, this is exactly what happened. He gave Mr. Van Lobenzeld several opportunities to explain a valid basis for this question that wasn't a violation of the order, and the explanation that was given today at the podium was given for the first time never to Judge Everingham. Judge Everingham asked immediately upon the violation, and was just told, I thought it was okay because it was a hypothetical. At the end of the day, he asked again, why did you ask the question? The answer was because it was hypothetical because I used the phrase Caribbean Island, and I didn't say O2 micro. As long as I didn't say O2 micro, I thought it was hypothetical. The problem with that is he had just said a couple of minutes before the question, O2 micro is a Cayman Islands company, and then followed up with the question. Now, are there any of you who have a problem with a company that puts its headquarters offshore on a Caribbean island in order to avoid paying U.S. taxes? That's at A472 in the record. So he had just said that they were surprised to be sued by this Cayman Islands company, O2 micro, at A467, just a couple of minutes before. So this wasn't hypothetical. And the court caught on to that. In the hearing, Judge Everingham had said, hypothetical doesn't answer the fact that the only evidence that was going to be in this case was the fact that the plaintiff was headquartered in the Cayman Islands. So we're far from a hypothetical situation. Is there any financial aspect to this sanction? In this appeal against Mr. Barnhill himself, no. Actually, no punishment was ever meted out of any kind whatsoever. And in the context of what happened, during the part where the court holds Mr. Van Lobenzell in contempt, first he says, this is the second time this has happened. He's had to sanction the client once. Now he's facing this a second time in front of the jury. He's determining he has to dismiss a jury. He has to re-impanel a new jury. He's having to bifurcate the case. This is a major disruption to the case. At the end of the day, he had to take the other defendants and say, I don't want you to be prejudiced by this. I'm going to give you a separate trial. I'm going to re-impanel a jury. All of this happened because of this violation of the order, and it was the second strike. There were costs assessed against Vitek as a result of this, right? Yes. In the other appeal, there was a question about sanctions and the level of sanctions against Vitek. Interestingly, Vitek is not appealing the sanctions order for money. And that was not against Mr. Van Lobenzell. And what was said in this instance was, at the beginning of this discussion, Magistrate Judge Everingham said, I'm going to see if I can't increase your awareness a little bit. Then he says, I'm going to hold you in contempt. Then he says, after he says, I've never had a lawyer violate one of my orders more egregiously than you have, he says, and so I hope that you, when you are assuring me that it will not happen again, and you're assuring counsel to the plaintiff that it will not happen again, you will understand fully how serious I am about my orders. And that's at A522. Then at the end of that discussion that he has, he notes, aren't you the same lawyer that came in front of me that I already sent your client for once? At the end of the discussion, he says, OK, well, the record is what it is at this time. I cannot, I do not, I do not want to address this issue with you again, sir. I really do not. But if you make me do it, I will do it, and I hope you understand that. The entire framework of this sanction was a coercive sanction. I mean, that's the only point of it. And he said in the order that if nothing else happened, he would consider it discharge, that there was no punishment to be meted out. And all of the case law is very consistent that that's the difference between civil and criminal. And furthermore, in addition to all of this, and I think this is one area where Mr. Van Lomansels is right, the main difference here is if it's civil, then what happens is there's no specific requirement at all. This is just a said and done deal, and there's nothing that the court has to look at or do. Were it deemed criminal under 28636E2, because it happened in the presence of the magistrate judge in this case, then all he would have had to do is file an order that laid out the facts of what happened. And in fact, he did. That's the order that's actually being appealed in this case. Now, there was a note that was made about a couple of cases, the Legrand case and the Gompers case. Now, the Gompers case is a very old Supreme Court case from 1911. It was never raised in the opening brief. It was raised for the first time, and it talked about extensively in Mr. Van Lomansels' reply brief. But I think that case does, they think it's misread in the brief, so I do want to make a note about it. In that case, what actually happened is the Supreme Court held that the contempt proceeding was civil, not criminal. It held that the punishment, because it was unconditional, that is, that the people at issue were automatically sentenced to jail for 12 months, 9 months, and 6 months with no other recourse and no key to get out of jail, was a criminal punishment and therefore didn't belong in the civil matter. But the court started by saying, let's look at if this is civil or criminal, and it said, well, let's see. It's in a civil matter. It was brought by a civil plaintiff. It wasn't a U.S. attorney who prosecuted it. All of these things are indicia that show that this is a civil contempt proceeding, and therefore shouldn't have an unconditional criminal penalty at the end of the day. The other thing that they noticed, that they said in that Supreme Court case that is relevant to today is they said, if it's going to be a criminal proceeding, that has to be a separate proceeding. And this was part and parcel of the same case, and that's how we know it was a civil case. That has a further impact on this case, because Mr. Van Lobenstelt himself has treated this order as civil, even while calling it criminal. He waited until the final decision and judgment in the civil case to file his notice of appeal. If this was, in fact, a criminal matter, then under the Gomper's authority that he just cited for the first time, that meant that his judgment became final when the order for sanctions was issued, because he's a separate defendant in that matter. And if that order became final, because there was no mention of Mr. Van Lobenstelt in the final order against Vitek, if the order against Mr. Van Lobenstelt is considered a separate matter per Gompers, he had 14 days under federal rule of appellate procedure 4 to file his notice of appeal. But he admits that he only filed his notice of appeal in October of more than a year later, in which case, if it turns out that this was a criminal matter, he has lost his right to appeal by filing his petition too late. If it's a civil matter, which we believe it is, then he's filed it timely, but just doesn't have a basis to be arguing it here. And obviously our main concern in this case is that the order itself was correct, that this was an order that was clearly and intentionally violated, and mainly that this serves as a basis for the sanctions that we'll talk about in the other case. And in fact, Vitek doesn't even discuss that. They just talk about the severity of the sanctions, but they admit that this was, in fact, violated, and Mr. Van Lobenstelt really should too. And if the court doesn't have any other questions, I will see the rest of my time. Thank you, Mr. Harkin. Thank you, Your Honor. I just wanted to make a couple of points clear. One is I don't want to leave the court with the impression that I believe that I acted correctly. I should have approached Judge Eberingham and cleared the question with him. It was a close question. That's what I should have done, and I was wrong not to do that. But that doesn't mean that what I did was such a clear violation of his order that it would support a contempt sanction here. And that's my point. I don't want to leave the court with the impression that I believe that what I did was right. Okay? And I know Your Honor has… Thank you, Mr. Van Lobenstelt. You're welcome. And I know that Your Honor has made it clear, and it's clear from Judge Eberingham's reaction at the time I asked the question, what his basis was for the ruling and his concern, and he expressed that very clearly. But I just wanted to point the court out to the point in the record, which is that at A305 of the joint appendix, it shows that this motion in Lemonet was not discussed, it was not argued at the pretrial conference, and the judge, at the time he issued his ruling, did not indicate the basis for it. He didn't provide any context or rationale behind the prescription that he, in fact, imposed. And so at the time I asked my question, his strongly held beliefs had not been made available to me or to the parties. And that's the point that I was getting at when I indicated that it was not clear what his intention was. And then the final point that I want to get back to is regarding the criminal and civil nature of the contempt sanction. I believe the Fifth Circuit's Camel case is very close on point, where there was a fully probated sentence that was treated as a criminal penalty, even though the jail sentence was not actually served. The LeGrand case, what the court there says is the fact that you didn't do the jail time doesn't mean that the sentence wasn't imposed, it means it wasn't executed. And so the fact that I didn't actually serve that time doesn't change that fact. And when you look at that and the fact that what he actually said in his order, the absolute sentence of 48 hours in jail, that makes it a criminal penalty. So if there are other questions, I'll save the rest of my time. Thank you. Thank you, Mr. Van Lovensels.